9th Cir. Civ. Case No. 12-56848
USDC Case No. SACV12-01732 JST(MLGx)

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

NAZIE AZAM,

*Appellant,*

v.

BANK OF AMERICA, NATIONAL ASSOCIATION; BANK OF AMERICA, NATIONAL ASSOCIATION as successor by merger to LaSalle Bank NA as trustee for WaMu Mortgage Pass-Through Certificates Series 2006-AR12 Trust; LASALLE BANK FINANCIAL SERVICES, INC. previously dba in California as ABN AMRO CAPITAL MARKETS;  LASALLE BANK NA as trustee for WaMu Mortgage Pass-Through Certificates Series 2006-AR12 Trust; JPMORGAN CHASE BANK N.A.; JPMORGAN CHASE BANK, N.A. as successor in interest to Washington Mutual Bank or assets thereof; WASHINGTON MUTUAL BANK FA; WASHINGTON MUTUAL BANK; CALIFORNIA RECONVEYANCE COMPANY;  HUEY-JEN CHIU; LOREN LOPEZ; COLLEEN IRBY,  DEBORAH BRIGNAC; KARIME ARIAS; FRED RESTREPO; and DOES 1-100.

*Appellees.*

_____

From the United States District Court for the Central District
The Honorable Josephine S. Tucker

_____

## APPELLANT'S OPENING BRIEF
_____

NINA RINGGOLD, Esq. (SBN #133735)
Attorney for Appellant
Law Offices of Nina R. Ringgold
9420 Reseda Blvd. #361, Northridge, CA  91324
Telephone:  (818)  773-2409

# TABLE OF CONTENTS

I.    INTRODUCTION  .................................................................. 1

II.   STATEMENT OF JURISDICTION  ...................................... 2

III.  STATEMENT OF THE ISSUES  ......................................... 3

IV.   STATEMENT OF THE CASE  ............................................ 3

V.    STATEMENT OF FACTS  .................................................. 11

VI.   SUMMARY OF ARGUMENT  ........................................... 17

VII.  STANDARD OF REVIEW  ................................................. 18

VIII. LEGAL ARGUMENT  ....................................................... 20

A.    Likelihood Of Success On The Merits

      1.  The District Court Abused Its Discretion Because There
          Is A Clear Error Of Law In Its Decision That The
          Bankruptcy Case Or The Rooker-Feldman Doctrine
          Barred Injunctive Relief  ................................................. 20

      2.  The District Court Abused Its Discretion Because
          Neither The Doctrine Of Abstention Nor The
          Anti-Injunction Act Is Applicable  ................................. 26

B.    The District Court Abused Its Discretion In Its Lack Of
      Consideration Of The Factor Of Irreparable Harm, Balancing
      Equities, And The Public Interest Particularly In Light Of The
      Enforcement Orders And Consent Judgment Which Are
      Designed To Benefit Persons In Plaintiff's Circumstances  .............. 29

IX. CONCLUSION ........................................................................ 31

STATEMENT OF RELATED CASE ........................................................... 32

CERTIFICATE OF COMPLIANCE ........................................................... 33

CERTIFICATE OF SERVICE ................................................................. 35

# TABLE OF AUTHORITIES

## CASES

Bay Area Addiction Research & Treatment, Inc. v. City of Antioch,
179 F.3d 725 (9th Cir. 1999) ........................................................ 18

California Pharmacists Ass'n v. Maxwell-Jolly,
563 F.3d 847 (9th Cir. 2009) ........................................................ 18

Caribbean Marine Services Company, Inc. v. Baldrige,
844 F.2d 668 (9th Cir. 1988) .................................................... 19-30

Carson v. American Brands, Inc.,
450 U.S. 79 (1981) ...................................................................... 19

City of Fontana,
307 F.3d 987 (9th Cir. 2002) ...................................................... 24

Colorado River Water Conservation District v. United States,
424 U.S. 800 (1976) .................................................................... 27

District of Columbia Court of Appeals v. Feldman,
460 U.S. 462 (1983) ............................................................ passim

Exxon Mobil Corporation v. Saudi Basic Industries,
544 U.S. 280 (2005) .................................................................... 25

GoTo.com, Inc. v. Walt Disney Co.,
202 F.3d 1199 (9th Cir. 2000) ................................................ 30-31

Granny Goose Foods,
415 U.S. 423 (1974) .................................................................... 18

High v. Cananaugh,
205 Cal.App.2nd 495 (Cal. 1962)  ................................................................. 22


Jones v. H.S.B.C.,
844 F.Supp.2d 1099 (S.D. Cal. 2012)  ........................................................... 20


Kougasian v. TMSL, Inc.
359 F.3d 1136 (9Th Cir. 2004) ....................................................................... 24-25


Levesque v. State of Maine,
587 F.2d 78 (1st Cir. 1978)  ............................................................................ 19


Maldonado v. Harris,
370 F.3d 945 (9th Cir. 2004)  ......................................................................... 24


Mazed v. JP Morgan Chase Bank, N.A.
471 Fed. Appx. 754 (9th Cir. 2012)(unpublished)  ..................................... 21


Middlesex County Ethics Committee v. Garden State Bar Association,
457 U.S. 423 (1982)  ........................................................................................ 26


Miller v. Homecomings Financial
(4:11-cv-04416)(S. D. Tx August 8, 2012)  ................................................... 30


Miofsky v. Superior Court of the State of California,
703 F.2d 332 (9th Cir. 1983)  ......................................................................... 26


Mitchum v. Foster,
407 U.S. 225, 237 (1972)  ................................................................................ 28


Naranjo v. SBMC Mortgage,
2012 WL 3030370 *3 (S.D. Cal.)  .................................................................. 29


Nelson v. National Aeronautics & Space Admin,
530 F.3d 865 (9th Cir. 2008)  ......................................................................... 30

<u>Noel v. Hall</u>,
341 F.3d 1148 (9th Cir. 2003) ........................................................... 24

<u>Northern Stevedoring & Handling Corp. v. International Longshoreman's &</u>
<u>Warehousemen's Union</u>,
685 F.2d 344 (9th Cir. 1982) ........................................................... 19

<u>Religious Technology Ctr., Church of Scientology Int'l v. Scott</u>,
869 F2d 1306 (9th Cir. 1989) ........................................................... 19

<u>Reusser v. Wachovia Bank, N.A.</u>,
525 F.3d 885 (9th Cir. 2008) ........................................................... 24

<u>Robinson v. Ariyoshi</u>,
753 F.2d 1468 (9th Cir. 1985) ........................................................... 25

<u>Scherbenske v. Wachovia Mortg, FSB</u>,
626 F. Supp. 2d 1052 (E.D. Cal. 2009) ........................................................... 28

<u>Southwest Voter Registration Educ. Project v. Shelley</u>,
244 F.3d 914 (9th Cir. 2003) ........................................................... 18

<u>Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co.</u>,
240 F.3d 832 (9th Cir. 2001) ........................................................... 18

<u>Winter v. Natural Res. Def. Council, Inc.</u>,
129 S. Ct. 365 (2008) ........................................................... 19

## **FEDERAL STATUTES**

11 U.S.C. § 305 ........................................................... 10,22

11 U.S.C. § 362 ........................................................... 4

12 U.S.C. § 1818 (i)(1) ........................................................... 27

28 U.S.C. § 157 (d)   ........................................................................ 10,22

28 U.S.C. 1292 (a)(1)  ...................................................................... 2,19

28 U.S.C. § 2201  ............................................................................. 5

28 U.S.C. § 2106   ........................................................................... 2

28 U.S.C. 2283 ............................................................................... 3,28

28 U.S.C. § 1331  ............................................................................ 2

28 U.S.C. § 1334_  ........................................................................... 22

28 U.S. 1343 (a)(1)-(3)  .................................................................. 2

## STATE STATUTES

Business and Professions Code § 17200 et seq   ........................................ 5

Civil Code § 51, 52.1, 52   ............................................................... 5

Civil Code § 2932.5   ..................................................................... 5

Code of Civil Procedure § 1060   ......................................................... 5

## I.     INTRODUCTION

Plaintiff Nazie Azam files this appeal from the October 11 and 22, 2012 orders of the District Court.  (Excerpts of Record "ER" 0-4).  Plaintiff is a member of the public and a homeowner identified as potentially harmed in unsound and unsafe foreclosure practices of Bank of America.  (See Judicial Notice "JN" 1-6, ER 252, 257, 261).  She sought a temporary restraining order and injunction so she could reach the remedy allowed under the Financial Remediation Framework.  The requested relief did not interfere with a consent order or judgment.  Instead, plaintiff requested relief uniquely suited to the exercise of federal jurisdiction – an opportunity to reach the relief expressly afforded by recently developed and a comprehensive federal scheme during a national crisis.  The District Court at first outright dismissed the case without a hearing.  Then upon reconsideration, it re-opened the case, but still challenged its own jurisdiction, and denied the injunctive relief requested. Plaintiff had shown she had complied with a state court injunction.  She also presented substantial evidence of blatant fraud in her first filed quiet title action by Bank of America.  Additionally, she presented evidence that Bank of America was refusing to accept her payments during a court ordered injunction in the state court.  Instead inconsistent with the consent orders and judgments Bank of

American was using a fictional entity to prohibit plaintiff from reaching the remedy of rescission expressly allowed under the Financial Remediation Framework. In other words, Bank of America was competing with the homeowner who had suffered the financial injury.

The District Court abused its discretion in its assessment of the likelihood to succeed on the merits because it applied an incorrect legal analysis as to the jurisdictional issues. Also, the District Court failed to consider the public interest, to balance the equities of each party, or to give sufficient weight to the irreparable harm of the plaintiff.

## II.    STATEMENT OF JURISDICTION

This court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1292 (a)(1). The October 11, 212 and October 22, 2010 orders are interlocutory orders appealable as a matter of right. The district court had jurisdiction over the action pursuant to 28 U.S.C. § 1331 and 28 U.S. 1343 (a)(1)-(3).

Additionally this court has jurisdiction under 28 U.S.C. § 2106 to vacate and reverse the order of the District Court. 28 U.S.C. § 2106, in pertinent part states, as follows:

> "The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause

2

and direct the entry of such appropriate judgment,
decree, or order, or require such further proceedings to be
had as may be just under the circumstances."

## III.    STATEMENT OF THE ISSUES

A.    Whether the District Court abused its discretion and applied an erroneous legal standard in denying injunctive relief.

B.    Whether the District Court erred in determining that it lack jurisdiction based on the plaintiff's chapter 13 bankruptcy or based on the Rooker-Feldman Doctrine.

C.    Whether the District Court is limited in enjoining the writ of possession arising from an unlawful detainer action under the Doctrine of Abstention or under 28 U.S.C. § 2283 particularly when the party pursuing litigation in the state court is a fictional entity without standing or a lawful registered entity in the State of California or the United States of America.

## IV.    STATEMENT OF THE CASE

Plaintiff was notified that she was one of the persons identified by the Office of Comptroller of Currency Board of Governors of the Federal Reserve System targeted in its enforcement orders against 14 large mortgage services for deficient mortgage servicing and foreclosure practices.  (ER 423, JN 6).  The orders required the servicers to conduct a comprehensive review of foreclosures that were in process or completed in 2009 to 2010 (the Independent

Foreclosure Review) to identify injury to borrowers that resulted from errors, misrepresentation, and other deficiencies in the foreclosure process.  Plaintiff provided information in this review, and as of September 28, 2012 she was notified that this review process was pending.  (ER 53, 261).  As part of this review process plaintiff is seeking rescission of the foreclosure sale and intends to maintain her home.

On October 9, 2012 plaintiff filed opposition to Bank of America, National Association as successor by merger to LaSalle Bank NA as trustee for WaMu Mortgage Pass-Through Certificates Series 2006-AR12 Trust's motion requesting relief from the stay under 11 U.S.C. § 362 in her chapter 13 bankruptcy.  This entity sought to enforce a writ of possession it obtained in a state unlawful detainer action.  Plaintiff opposed the motion highlighting that this entity was not a real party in interest, that she had filed the first action, which included quiet title claims, and in that action Bank of America, National Association had engaged in actual fraud, and that the property was necessary for her reorganization.  The bankruptcy court granted relief of stay.  Immediately following the entry of this order of the bankruptcy court plaintiff met with the trustee and agreed to dismiss her bankruptcy case so she could obtain immediate relief in the District Court. (ER 20, 35, 53).

4

With very little time following the bankruptcy court's ruling granting relief of stay, on the exact same day, plaintiff filed a complaint and an ex parte application for temporary restraining order, protective order, and for issuance of order to show cause re preliminary injunction. (ER 83-423). Essentially plaintiff was seeking a temporary restraining order to enable the issues to be more thoroughly presented to the court at a hearing on issuance of a preliminary injunction. Plaintiff effectuated service of the complaint and ex parte application on BANA and BANA Myth the same day. (ER 71-80). She personally served counsel for BANA and BANA Myth. (ER 88, 98, 101-102, 266, 273)

The complaint, in part, includes claims for Declaratory Relief (28 U.S.C. § 2201, Cal. Code of Civil Procedure § 1060), Temporary and Permanent Injunctive Relief and Equitable Relief, Wrongful Foreclosure and Cancellation of Trustee Deed Upon Sale, Quiet Title, Negligence, violation of California Civil Code § 2932.5, Violation of Business and Professions Code § 17200 et seq., Violation of Cal. Civil Code § 51, 52.1, 52, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress. (ER 279-423). The named defendants include:

(1) *Bank of America, National Association* ("BANA") (ER 287)

(2) *Bank of America, National Association as successor by merger to LaSalle Bank NA as trustee for WaMu Mortgage Pass-Through Certificates Series*

*2006-AR12 Trust* ( "BANA Myth"). (ER 287-288). As to BANA Myth

the complaint alleges as follows:

> "Plaintiff is informed and believes and thereon alleges
> that Bank of America, National Association as successor
> by merger to LaSalle Bank NA as trustee for WaMu
> Mortgage Pass-Through Certificates  Series 2006-AR12
> Trust ( 'BANA Myth') is not a separate entity from Bank
> of America, National Association.  Instead, it is a
> misleading reference inserted into various recorded
> documents in the Orange County of Bank of America,
> National Association acting for itself.  The combined
> reference is designed to confuse was should be two
> separate entities: 'Bank of America, National Association
> as successor by merger to LaSalle Bank NA' and 'LaSalle
> Bank NA was a trustee under a pooling and servicing
> agreement for the WaMu Mortgage Pass-Through
> Certificates Series 2006-AR12 Trust'.  Plaintiff is informed
> and believes and thereon alleges that the deed of trust
> recorded August 17, 2006 involving Ms. Azam as
> borrower and Washington Mutual Bank FA was never
> securitized and did not transfer to a separate trust under
> a pooling and servicing agreement ('PSA') which had a
> cut-off date of September 1, 2006 and the BANA Myth is
> part of a flawed scheme to cover up this substantial
> defect." (ER 287-288).

(3) *LaSalle Bank NA as trustee for WaMu Mortgage Pass-Through*

*Certificates  Series 2006-AR12 Trust.*  (ER 288). As to this entity the

complaint alleges:

> "Plaintiff is informed and believes and thereon alleges that LaSalle
> Bank NA as a trustee for WaMu Mortgage Pass-Through

6

Certificates Series 2006-AR12 Trust is the named trustee under the pooling and servicing agreement with a cut-off date of September 1, 2006. ('PSA trustee'). This cut-off date was before the merger between Bank of America, National Association and LaSalle which plaintiff is informed and believes and thereon alleges took place on or about October 1, 2007. Plaintiff is informed and believes and thereon alleges that either the PSA trustee was improperly purporting to act as a trustee for the WaMu Mortgage Pass-Through Certificates Series 2006-AR12 Trust ('WAMU Series 1006-AR-12 Trust') after the cut-off date specified in the PSA or that JPMorgan Chase Bank N.A. was erroneously acting as a PSA trustee after the September 1, 2006 cut-off date of the PSA and after the October 1, 2007 merger between LaSalle and BANA." (ER 288)

(4) *LaSalle Bank Financial Services, Inc. previously dba in California as ABN AMRO Capital Markets.* (ER 288)

(5) *JP Morgan Chase Bank N.A.* ("JP Morgan") and the complaint alleges that JP Morgan is the successor in interest to Washington Mutual or assets thereof. (ER 288)

(6) *Washington Mutual Bank FA and Washington Mutual Bank.* (ER 288-289). As to Washington Mutual Bank FA the complaint alleges that on the date of execution of the original deed of trust (August 17, 2006) between Azam and Washington Mutual FA that this entity has ceased to exist in the State of California and had notified the Security and Exchange Commission that it has ceased to function as a federal savings bank. It also alleges that Washington Mutual Bank was closed by the Office of Thrift Supervision and the FDIC was named

as a receiver on September 28, 2008. (ER 288-289).[1] It further alleges

that there does not exist a schedule of mortgage loans alleged to have

been purchased by JPMorgan from the FDIC:

> "Plaintiff is informed and believes and thereon alleges
> that on September 25, 2008 Washington Mutual Bank was
> placed in a receivership with the FDIC. Plaintiff is
> informed and believes and thereon alleges that shortly
> thereafter JPMorgan purchased unspecified loans from
> the FDIC after Washington Mutual Bank was placed in a
> receivership. It is reported that Lawrence Nardi, the
> operations unit manager and mortgage officer for
> JPMorgan (and who had previously worked with
> Washington Mutual Bank) recently testified at his
> deposition in the case of *JPMorgan Chase Bank, N.A. as
> successor in interest to Washington Mutual Bank v. Waisame*,
> Florida 5th Judicial Circuit Case No. 2009-CA-005717 that
> there did not exist a schedule of mortgage loans
> purchased by JPMorgan or evidence of assignments of the
> mortgage loans purchased by JPMorgan. Plaintiff has
> never seen or been able to locate an assignment of deed of
> trust from Washington Mutual Bank or Washington
> Mutual Bank FA to JPMorgan Chase." (ER 293).

---

[1] The original deed of trust executed by plaintiff recorded by
"Washington Mutual FA" on August 17, 2006 falsely states it is a
"Federal Savings Bank organized and existing under the laws of the
United States of America". (ER 339). It states that the applicable law
includes all controlling applicable federal, state and local statutes,
regulations, ordinances and **administrative rules and orders (that
have the effective of law)** as well as all applicable final, non-
appealable judicial opinions. (ER 340)

(7) *California Reconveyance Company* with it the trustee specified in the original deed of trust with Washington Mutual FA (ER 290, 340).

(8) *Huey-Jen Chiu, Loren Lopez, Colleen Irby, Deborah Brignac, Karime Arias, Fread Restrepo* are all individuals involved as alleged notaries and officers involved in various transfers including the alleged non-judicial foreclosure sale based on a fraudulent transfers or assignment of an originating void deed of trust. (ER 290-292)

In the ex parte application for temporary restraining order, protective order, and issuance of order to show cause re preliminary injunction. Plaintiff argued that BANA Myth had obtained a writ of possession to evict her from her home when it did not have valid legal or equitable title, there was never a transfer of her mortgage into a securitized trust, and that she was eligible for rescission of foreclosure sale and transactions under the Financial Remediation Framework established by the April 13, 2011 consent order of the Office of the Comptroller of Currency Board of Governors of the Federal Reserve System. She claimed that BANA Myth was attempting to force her out of her home so she could not reach the remedy specifically designed for her benefit. (ER 85-86). Plaintiff requested at least a TRO so that the matters could be addressed by hearing before the court. (ER 86).

On October 11, 2012 without hearing the District Court dismissed the entire action for lack of subject matter jurisdiction. (ER

70).  The court based this ruling on an indication that the "property has become part of the bankruptcy estate" and that there would be a "de facto appeal" from a state court judgment.  Id.  However, the bankruptcy court had granted relief of stay as to the property and there was not judgment before the court.  Instead the complaint presented showed that BANA had claimed in the state court in its pleadings that it did not possess an interest in the property and that it had no current relationship with the property.  (See ER 121 ¶40-122¶43).  On this same day plaintiff filed an appeal.  (ER 64-68).

On October 18, 2012 plaintiff filed an ex parte application to vacate the October 11, 2012 order, or reconsideration, new trial, and/or alter or amend the order.  Plaintiff addressed the two issues raised by the court, namely the matter of bankruptcy court jurisdiction and the Rooker-Feldman doctrine.  As alternative relief the ex parte application requested a stay and injunction pending appeal.  (ER 14-30).  Plaintiff presented evidence that the property was no longer within the bankruptcy court jurisdiction and if there was doubt there existed concurrent jurisdiction with the district court or that a withdrawal of reference under 28 U.S.C. § 157 (d) or 11 U.S.C. § 305 was proper.  She also argued that she entitled to relief (a) under the April 4, 2012 consent judgment in *United States of America et al. v. Bank of America Corp et al* (USDC District of Columbia CV 12-00361 RMC) and that the March 19, 2012 writ of possession was

10

executed only 16 days before the consent judgment, and (b) under the under the Financial Remediation Framework established by the Office of the Comptroller of Currency Board of Governors of the Federal Reserve System and enforcement orders thereon.  She presented evidence of BANA's false representations on February 15, 2011 in her first filed quiet title action which was dismissed without prejudice.  (ER 22, 24,231, 250).  Finally, she presented evidence that she had been approved for a loan modification, there was a state court injunction order in her first filed quiet title action which had expressly allowed her to make payments of $2,000 per month and that she had complied with this order, and that she had paid $20,000 under the injunction any and BANA refused to accept her payments. (ER 50-63, 254).

On October 22, 2012, without allowing a hearing, the District Court granted in part and denied in part plaintiff's ex parte application.  The court granted the application as to the dismissal of the complaint and reopened and reinstated the complaint.  It denied the request for a temporary restraining order and issuance of an order to show cause for preliminary injunction.  The court still maintained its concern that the bankruptcy court had exclusive jurisdiction over the property or that it lacked subject matter jurisdiction under the Rooker-Feldman doctrine.  It also questioned whether it was required to abstain from the unlawful detainer action

11

(when plaintiff was seeking only to enjoin enforcement of a writ of possession subsequent to action).  (ER 13).

On October 22, 2012 plaintiff filed a timely amended notice of appeal.  (ER 5-10).

## V.     STATEMENT OF FACTS

Plaintiff national origin is the country of Iran and she is Persian. On August 7, 2006 she purchased as 18 Dorchester Green, Laguna Niguel, California 92677-9375 ("the property") taking title as a married woman as her sole and separate property.  286.  She executed a deed of trust with Washington Mutual Bank FA believing it was truly a bank authorized to conduct business in the State of California and in the United States and it was recorded on August 17, 206.  It was not.  (288-289).

On September 1, 2006 was the cutoff date for the WaMu Mortgage-Pass-Through Certificates Series 2006-AR12 Trust and LaSalle Bank was the trustee for this trust.  ("WaMu 2006-AR12 Trust") (ER 288).

After the cutoff date of September 1, 2006 for the WaMu 2006-AR12 Trust there was a merger between LaSalle Bank and BANA on October 1, 2007.  (ER 288).

On  September 28, 2008 FDIC as receiver took over Washington Mutual FA and Washington Mutual Bank.  (ER 289, 293).  Pursuant to a purchase and assumption agreement between the FDIC and

JPMorgan, JPMorgan acquired assets of Washington Mutual and there does not exist a schedule of mortgage loans purchased or evidence of assignment of the mortgage loans purchased by JPMorgan. (ER 293). Moreover, since January 1, 2005 Washington Mutual had no power or authority to make mortgage loans. FDIC acquired assets by operation of law and JPMorgan purchased assets or loans which existed. JPMorgan and its successors are bound by their own due diligence or lack thereof.

In 2008 plaintiff applied for a loan modification and was repeatedly told to re-send information. (ER 293)

On January 14, 2009 JPMorgan recorded an assignment of deed of trust transferring interests in the purported original deed of trust to LaSalle Bank as trustee of the WaMu 2006-AR12 Trust. However, this transfer was beyond the cutoff date for the WaMu 2006-AR12 Trust. (298-299¶52, 363). Also, there was never any recorded assignment of a deed of trust or mortgage to JPMorgan. Mostly likely by now JPMorgan realized, not only was Washington Mutual not an authorized bank at the time of plaintiff's loan and the original deed of trust, but also there was no loan associated with the securitize trust as represented to investors. JPMorgan was not the original mortgagee or lender on the deed of trust and it never recorded an interest in a mortgage by assignment or deed of trust. JPMorgan never gained a right to sale at a non-judicial foreclosure

13

proceeding and beneficiary Washington Mutual did not exist and was never authorized by law to enter into a deed of trust with plaintiff.

On January 14, 2009 CRC recorded a notice of default and election to sell under the deed of trust.  Again, it specified that nonexistent bank Washington Mutual as a beneficiary under the deed of trust had executed and delivered to CRC (as trustee) a written declaration and demand for sale. (ER 367).

On January 14, 2009 a notice of default and election to sell was recorded by CRC on behalf of non-existent bank and beneficiary Washington Mutual Bank. (ER 366-367).

Under one of the multiple suspect signatures of Deborah Brignac on April 17 2009 recorded a notice of trustee sale.  (ER 369-370).

On December 21, 2009 a trustee deed upon sale was record in the name of Bank of America, National Association as successor by merger to LaSalle Bank NA as trustee for WaMu Mortgage Pass-Through Certificates  Series 2006-AR12 Trust  giving rise to the BANA Myth.  The fact that BANA had merged with LaSalle did not turn BANA into a trustee for the WaMu 2006-AR12 Trust.  The cutoff date for WasMu 2006-AR12 Trust was September 1, 2006 and the merger between BANA and LaSalle was October 1, 2007. (ER 371-373).

On December 21, 2009 Brignac purporting to act as "LaSalle NA as trustee Washington Mutual Pass-Through Certificates Series 2006-AR12 Trust by JPMorgan Chas Bank, National Association, Attorney in Fact" assigned the original deed of trust to BANA Myth. (ER 375).

On July 2, 2010 plaintiff filed a complaint against BANA in the state court for (1) Wrongful Foreclosure, (2) Cancellation of Trustee's Deed Upon Sale (if issued), (3) Declaratory Relief, (4) Fraud, (5) Intentional Misrepresentation, (6) Negligent Misrepresentation, (7) Rescission and Restitution, (8) Declaration of Resulting or Constructive Trust, (9) Quiet Title, (10) Breach of Contract, and (11) Accounting. BANA filed a demurrer on February 15, 2011.  (ER 295).

On July 10, 2010 the state court entered an injunction against any writ of possession until further order of the court and it expressly ordered plaintiff could make payments of $2,000 per month.  Plaintiff made the required payments but BANA refused to accept the payments.  (ER 50-55).

In an extraordinary showing of fraud, in writing, BANA informed the court the following:

> "Plaintiff asserts a claim for quiet title against BANA, but BANA does not possess any interest in the Property…Again, Plaintiff appears to mistakenly bring this action against BANA who has no current relationship with Plaintiff or the Property."  Id.

15

BANA knew it was in possession of the December 21, 2009 recorded trustee deed upon sale dated December 11, 2009 claiming an interest in the property by device of the BANA Myth. (ER 371-373). Plaintiff had a proper and early remedy to quiet title, void the wrongful foreclosure and was attempting to effectuate a loan modification which had already been confirmed.

On April 13, 2011 consent order of the Office of the Comptroller of Currency Board of Governors of the Federal Reserve System with respect to BANA and other banks. (JN 1-4, 6).

On October 20, 2011 the state court dismissed plaintiff's action, including the claims for quiet title *without prejudice.* (ER 421).

After causing plaintiff's state action on quiet title to dismissed without prejudice based on fraudulent representations, on March 19, 2012 BANA Myth then obtained a writ of possession in an unlawful detainer action in which issue of ownership and title cannot be raised as a defense. (ER 425-426). An action which was prohibited under the April 13, 2011 consent order.

On April 4, 2012 a consent judgment was entered in the case of *United States of America et al. v. Bank of America Corp et al* (USDC District of Columbia CV 12-00361 RMC) requiring BANA to provide $7,626,200 of relief to consumers who meet eligibility criteria and $948,000,000 of refinancing relief to consumers who meet the eligibility criteria. (JN 5)

16

On June 12, 2012 the Office of the Comptroller of Currency Board of Governors of the Federal Reserve System published its Financial Remediation Framework for use in Independent Foreclosure Review.

On August 30, 2012 plaintiff filed a chapter 13 bankruptcy. On September 28, 2012 plaintiff received notification that the processing of her request in the Independent Foreclosure Review Process was still in process. (ER 261).

On October 9, 2012 the bankruptcy court granted BANA Myth's motion for relief of stay and a formal order was entered on October 31, 2012. (JN 7). On November 28, 2012 there was notice of dismissal of the bankruptcy. (JN 8).

Therefore, although there have been extraordinary events which have occurred which would allow relief to plaintiff including rescission of the foreclosure of her home, without the injunctive relief afforded by the district court, plaintiff is unable to effectively reach the relief intended to benefit the public and to avoid irreparable harm.

## VI.    SUMMARY OF ARGUMENT

The District Court abused its decision and applied an erroneous legal standard in denying the requested temporary restraining order, which is tantamount to denial of a preliminary injunction, because neither the bankruptcy case or the Rooker-Feldman Doctrine

17

operated as a bar.  Additionally neither the doctrine of abstention of the Anti-Injunction Act barred the relief sought in light of the comprehensive federal scheme designed to benefits persons impacted by unsound and unsafe practices in 2009 through 2010.  There is reversible error in the failure to consider the factors of irreparable harm, balancing of the equities, and the public interests.

**VII.  STANDARD OF REVIEW**

The standard for issuing a temporary restraining order and a preliminary injunction are substantially identical.  Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co., 240 F.3d 832, 839 n. 7 (9th Cir. 2001).  This court reviews a district court's decision to grant or deny a preliminary injunction for abuse of discretion.  Southwest Voter Registration Educ. Project v. Shelley, 244 F.3d 914, 918 (9th Cir. 2003).  The district court's interpretation of the underlying legal principles is subject to de novo review.  A district court abuses its discretion in denying a request for preliminary injunction when it makes an error of law or bases its decision on an erroneous legal standard or clearly erroneous findings of fact.  Id., see also California Pharmacists Ass'n v. Maxwell-Jolly, 563 F.3d 847, 849 (9th Cir. 2009), Bay Area Addiction Research & Treatment, Inc. v. City of Antioch, 179 F.3d 725, 730 (9th Cir. 1999).  The underlying purpose of a temporary restraining order is to preserve the status quo and prevent irreparable

harm before a preliminary injunction hearing may be held.  <u>Granny Goose Foods</u>, 415 U.S. 423, 439 (1974).

Plaintiffs seeking a preliminary injunction in a case in which the public interest is involved must establish four elements:  (1) that they are likely to succeed on the merits of their substantive claim; (2) that they are likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest.  See <u>Winter v. Natural Res. Def. Council, Inc.</u>, 129 S. Ct. 365, 274 (2008). Failure to consider the public interest or to identify harm is reversible error. See <u>Caribbean Marine Services Company, Inc. v. Baldrige</u>, 844 F.2d 668 (9th Cir. 1988).

A hearing or full adversary proceeding is not required for a TRO to function as an appealable order .  See <u>Northern Stevedoring & Handling Corp. v. International Longshoreman's & Warehousemen's Union,</u> 685 F.2d 344 (9th Cir. 1982) (TRO entered without full adversary hearing), <u>Religious Technology Center, Church of Scientology International v. Scott</u>, 869 F.2d 1306,1309 n 6 (rejecting the notion that full adversary proceeding was a necessary requirement), <u>Carson v. American Brands, Inc.</u>, 450 U.S. 79, 84 (1981). (no adversarial hearing requirement), <u>Levesque v. State of Maine</u>, 587 F.2d 78,79 (1st Cir. 1978) (adversarial hearing is not necessary).  The court considers whether a full adversarial hearing OR in the absence

of appellate review further interlocutory relief is unavailable.    It is
apparent on this record that plaintiff attempted to obtain an order to
show cause re preliminary injunction on two occasions.  The purpose
of 28 U.S.C. § 1292 (a)(1) is furthered because this appeal allows the
only effectual challenge to an interlocutory order which has serious
and irreparable consequences.  <u>Carson</u> *supra*.   Here, the record shows
that the District Court would not allow a hearing and the denial of
the temporary restraining order given the imminent loss of plaintiff's
home is tantamount to the denial of a preliminary injunction.

## VIII. LEGAL ARGUMENT

### A.    Likelihood of Success on the Merits

#### 1.  The District Court Abused Its Discretion Because There Is A Clear Error Of Law In Its Decision That The Bankruptcy Case Or The Rooker-Feldman Doctrine Barred Injunctive Relief

The District Court determined that there was not a likelihood of
success on the merits because it believed the property was in the
exclusive jurisdiction of the bankruptcy case, that under the Rooker-
Feldman doctrine the court would lack subject matter jurisdiction,
that the doctrine of abstention or Anti-Injunction Act would preclude
federal court action.   None of these matters or principles were
applicable to the case and the authority cited <u>Jones v. H.S.B.C.</u>, 844
F.Supp.2d 1099, 1100 (S.D. Cal. 2012) also not applicable.  In <u>Jones</u> the
plaintiff had not certified in writing any efforts made to put

defendant on notice of his ex parte motion for TRO and had not offered any reason why notice should not be required.  Here, plaintiff personally served defendant's attorney with the TRO and served the ex parte application, the complaint, and the summons on the same day it was filed.  In Jones the plaintiff in pro per was claiming a TRO was necessary because he had "bad information", there were "aggressive bank closers" and a "bad deal".  Neither the complaint nor the TRO of the plaintiff in the case made such conclusory allegations.  While it is clear there are urgent circumstances and more detail could have been provided, if there were more time, plaintiff provided sufficient information concerning her claims to warrant a hearing.  Plaintiff's showing of the (1) the clear fraudulent representations made in her quiet title action, (2) that fact that she had complied with the injunction order of the state court order by making all the required payments[2], (3) that Washington Mutual was not authorized as a bank as to the originating deed of trust and the fact that subsequent transfers were made beyond the cutoff date for the securitized trust, and (4) the fact that plaintiff was within the class of persons entitled to relief under the remediation framework demonstrated a likelihood of success.

---

[2] Compare Mazed v. JP Morgan Chase Bank, N.A. 471 Fed. Appx. 754 (9th Cir. 2012)(unpublished).

### a.    Bankruptcy Case

The District Court was incorrect in its assessment that the property was within the jurisdiction of the bankruptcy court. Plaintiff notified the court that BANA Myth had been granted relief of stay. Therefore, the property was no longer within the bankruptcy court's jurisdiction. The bankruptcy court had granted relief of stay and there was an agreement to dismiss between the plaintiff and the trustee. And, in fact a formal order was entered granting relief of stay and the bankruptcy case was dismissed. (JN 7,8).

Even if the relief of stay had not been granted and the entire bankruptcy had not yet been formally dismissed, the District Court did not lack jurisdiction. See 28 U.S.C. § 1334.   Also, the District Court had jurisdiction under 28 U.S.C. § 157 (d) to withdraw a reference to the bankruptcy court. Such withdrawal is proper when a proceeding requires "consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." Additionally 11 U.S.C. § 305 allowed the district court to suspend the proceedings in the interest of creditors and the debtor would be better served by the suspension. Here, the court could have suspend the relief of stay order before formal entry thereby allowing temporary or preliminary injunctive relief pending further disposition and review.

## b.    Rooker-Feldman Doctrine

The District Court abused its discretion by its indication that it lacked subject matter jurisdiction under the Rooker-Feldman doctrine.  Generally issues of title to property cannot be raised in unlawful detainer actions.  See <u>High v. Cananaugh</u>, 205 Cal.App.2[nd] 495 (Cal. 1962).  A writ of possession occurs after conclusion of an unlawful detainer actions therefore the District Court's reference to an ongoing state court action is erroneous.  (ER 2).  An unlawful detainer action cannot resolve issues concerning title therefore the any state court judgment could not operate as a bar to federal court jurisdiction.  The wrong which plaintiff focused upon in her ex parte application was the fraud and illegal acts which were not part of the unlawful detainer including but not limited to the fact that in Plaintiff's first filed action for quiet title that BANA admitted that his no interest in the property (when it was named in the trustee deed on sale) but nevertheless caused the quiet title action to be dismissed without prejudice and pursued actions to remove plaintiff from possession of her property.  Essentially BANA admitted that it did not have standing and was not a real party in interest in plaintiff's quiet title action and refused to accept the payments from plaintiff, then it used BANA Myth to maliciously pursue an unlawful detainer action in the state court and a motion for relief of the automatic

23

bankruptcy stay in the federal court.  The District Court disregarded the relevant judgment and acts of the fictional entity (BANA Myth), and it abused its discretion in its total disregard of the fact that plaintiff's claim concerning quiet title were dismissed *without prejudice* in the state court and the circumstances of the injunction granted in the state court.  On October 20, 2011 the dismissal without prejudice was entered by a state court judge who was different than the assigned judge who had ordered the injunction prohibiting any lock-out if monthly payments were made.  The assigned judge (Judge Francisco F. Firmat) on July 19, 2010 had ordered an injunction and plaintiff had been diligently and properly complied with the injunction paying $2,000 per month for approximately 16 months under the terms of the order while steadfast maintained its position to deny the payments even after the April 13, 2011 consent order. (ER  421, JN 1-4).

When a federal plaintiff is alleging an illegal act or omission by adverse parties the Rooker-Feldman doctrine does not apply.  Noel v. Hall, 341 F.3d 1148, 1164 (9th Cir. 2003).  It also does not apply when there is an independent basis for setting aside the judgment.  See Kougasian v. TMSL, Inc., 359 F.3d 1136, 1141 (9th Cir. 2004), City of Fontana, 307 F.3d 987, 993-996 (9th Cir. 2002).  There is no de facto appeal under these circumstances for plaintiff is not alleging legal error by the state court but rather extrinsic fraud and illegal acts of an

adverse party.  See <u>Maldonado v. Harris</u>, 370 F.3d 945, 950 (9th Cir. 2004).  Plaintiffs' claims of extrinsic fraud could not be and were not raised in the summary unlawful detainer proceedings in the state court.  BANA's fraud in the first filed quiet title action of the plaintiff prohibited adjudication of the issues in the state court and the dismissal of plaintiff's claims were without prejudice.  Therefore, unlike <u>Reusser v. Wachovia Bank, N.A.</u>, 525 F.3d 885, 860 (9th Cir. 2008) the alleged extrinsic fraud was not raised and rejected in the state court.

Plaintiff is not seeking to overturn a final state court judgment and her federal claims were not litigated or addressed in the state court.  See <u>Robinson v. Ariyoshi</u>, 753 F.2d 1468, 1472 (9th Cir. 1985)(federal claims not decided by state court are barred by the Rooker-Feldman doctrine).   Additionally, when there is parallel state and federal litigation the Rooker-Feldman doctrine is not triggered simply by entry of a state court judgment.  See <u>Exxon Mobil Corporation v. Saudi Basic Industries</u>, 544 U.S. 280, 281-282 (2005). (Rooker-Feldman does not support the proposition that properly invoked concurrent jurisdiction vanishes if a state court reaches a decision on the same or related question while the case remains sub judice in the federal court).   Here, BANA Myth and not BANA was the party in the unlawful detainer action.  As to BANA Myth, a completely fictional entity, BANA would have to identify and prove

the issues it claims relate to issue or claim preclusion. As discussed above Rooker-Feldman does not apply where there is extrinsic fraud. Kougasian *supra*.

## 2. The District Court Abused Its Discretion Because Neither The Doctrine of Abstention Nor the Anti-Injunction Act Is Applicable

### a. Doctrine of Abstention

Abstention remains an extraordinary and narrow exception to the general rule that federal courts have "no more right to decline the exercise jurisdiction which is given, than to usurp that which is not given" Miofsky v. Superior Court of the State of California, 703 F.2d 332, 338 &n. 9 (9th Cir. 1983). The doctrine of abstention under Younger v. Harris, 401 U.S. 37 (1971) has only been extended in a civil context when the state court proceedings are ongoing, the state court proceedings implicate an important state interest, and the state court proceedings provide an adequate opportunity to raise federal questions. See Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423 (1982). The court abused its discretion in applying the abstention doctrine and in raising the issue in the first instance in the October 22, 2012 order without an allowing plaintiff an opportunity to present plaintiff's legal position.

First, there did not exist ongoing state court proceedings and the only issue had to do with the a stay of the writ of execution which had been issued to BANA Myth pending adjudication of federal claims and to enable plaintiff to reach the relief intended for her benefit under the consent order and judgment with BANA.

Secondly, there did not exist a vital state interest in the unlawful detainer action but rather a vital federal interest allowing relief and access to the relief by the homeowners identified in the April 13, 2011 consent order, the April 4, 2012 consent judgment, and the June 21, 2012 Financial Remediation Framework.  (JN 2-6).  The District Court lacks subject matter jurisdiction to enforce the consent order of OCC.  See 12 U.S.C. § 12 U.S.C. § 1818 (i)(1).[3]  However, plaintiff is not attempting to "affect" or even to enforce a consent order issued by the OCC and in accord with the consent order and consent judgment she maintains her personal claims against defendants.  Instead, her ex parte application merely requested to be afforded an opportunity to reach the relief offered by the consent order and consent judgment.  She claimed that the benefit of rescission under the Financial Remediation Framework required her to be in possession of her home and that she has done everything possible to maintain possession and her claim to be the rightful owner of her home.   To the extent 12 U.S.C. § 1818 (i)(1) is applicable the statutory exception applies because there is not an adequate alternative judicial review or remedy for the unlawful activity's victim.  Irrespective of the consent order and judgment, the identified class would lose their property, because of the lack of completion of the Independent Foreclosure Review process.  (See ER 423-432).  Plaintiff's request for relief pending this process was within its subject matter jurisdiction of the District Court and the court abused its discretion and applied an erroneous legal standard in applying the

---

[3] This is not necessarily the case as to the third party beneficiaries under the consent judgment.

27

abstention doctrine without a hearing.  Unlike <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800, 813-820 (1976) the comprehensive system as to property impacting the banking system and immediate relief to impacted homeowners was clearly a federal matter.

Finally, there did not exist an opportunity to raise federal questions or issues in a summary unlawful detainer action.  The comprehensive framework of financial remediation framework after well-founded findings of unsound and unsafe foreclosure practices supports plaintiff's view of an inability to effectively address federal claims in the state court.

### b.      Anti-Injunction Act, 28 U.S.C. section 2283

Under the Anti-Injunctive Act ("AIA"), a court of the United States may not grant an injunction to stay proceedings in a state Court except as expressly authorized by act of Congress or where necessary in aid of its jurisdiction, or to effectuate its judgments."

In order to qualify under the expressly authorized exception of the AIA a federal law does not need to contain an express reference to the AIA or expressly authorize an injunction of a state court proceeding to qualify as an exception. <u>Mitchum v. Foster</u>, 407 U.S. 225, 237 (1972).  "The test, rather, is whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of

a state court proceeding." Id. 238.   Here, an Act of Congress allowed the Board of Governors of the Federal Reserve System to implement the Financial Remediation Framework and in order for plaintiff to reach the remedy requires a stay of the writ of execution.  The District Court's reliance on Scherbenske v. Wachovia Mortg, FSB, 626 F. Supp. 2d 1052 (E.D. Cal. 2009) is improper in that it pre-dates the April 13, 2011 consent order, the April 4, 2012 consent judgment, and the June 21, 2012 Financial Remediation Framework.  All of statutory exception to the AIA were applicable.  Additionally, to the extent there was any doubt, plaintiff should have been provided with notice that the court was considering this issue and provided an opportunity to present legal argument and facts pertaining the matters raised in the first instance in the October 22, 2012 order.

**B.    The District Court Abused its Discretion In Its Lack of Consideration of the Factor of Irreparable Harm, Balancing Equities, and The Public Interest Particularly In Light of the Enforcement Orders and Consent Judgment Which Are Designed To Benefit Persons In Plaintiff's Circumstances**

The district court abused its discretion in failing to address the issue of irreparable harm to plaintiff in light of her showing of eligibility for the Financial Remediation Framework, and that she had complied with the state court injunction prior to BANA's misrepresentation in the state court proceedings.  BANA had an

opportunity to provide opposition but failed to present opposition. There was no opposing evidence that the claimed assignment of the deed of trust to plaintiff property to the WaMu 2006-AR12 Trust and was AFTER the cut-off date of September 1, 2006 under the trust pooling agreement for the trust.  See <u>Naranjo v. SBMC Mortgage</u>, Slip Copy, 2012 WL 3030370 *3 (S.D. Cal.) ("The vital allegation in this case is the assignment of the loan into the WAMU Trust was not completed by May 30, 2006 as required by the Trust Agreement.  This allegation gives rise to a plausible inference that the subsequent assignment, substitute, and notice of default and election to sell may also be improper"), <u>Miller v. Homecomings Financial</u> (4:11-cv-04416)(S. D. Tx August 8, 2012) (homeowners have legal standing to challenge the validity or effectiveness of any assignment or chain of assignments under which a party claims the right to foreclosure on their property.).  Given the relative size and resources available to BANA and plaintiffs showing that she had complied with the state court injunction and the lack of any appreciable harm to the fictional entity BANA myth which had obtained the writ of possession, the court failed to properly consider the factor of irreparable harm and on balancing the equities this factor should have tipped in appellants' favor.  <u>GoTo.com, Inc. v. Walt Disney Co.</u>, 202 F.3d 1199, 1210 (9th Cir. 2000).  The loss of unique real property cannot be adequately

remedied through damages. <u>Nelson v. National Aeronautics & Space Admin</u>, 530 F.3d 865, 882 (9th Cir. 2008).

There is reversible error by the court's failure to consider the public interest or to identify any harm to BANA Myth.  See <u>Caribbean Marine Services</u> *supra*.  The public interest is advanced by allowing the proceedings to be conducted in a manner which allows members of the public whose foreclosures were in process of competed in 2009 or 2010 to obtain access to the relief which the government and BANA agreed is to be afforded to homeowners in the Financial Remediation Framework.  (JN # 6).  Given the relative size, strength, and resources available to BANA Myth by acting through BANA, there was a lack of any appreciable harm to this defendant and the relief sought by plaintiff maintained the parties in the last uncontested status.  <u>GoTo.com.</u> *supra* at 1210.

## IX.    CONCLUSION

For the foregoing reasons appellant respectfully requests that this court grant the relief sought by this appeal.

Dated:  December 3, 2012

LAW OFFICE OF NINA R. RINGGOLD

By:    <u>s/ Nina R. Ringgold</u>
            Nina R. Ringgold, Esq.
            Attorney for the Appellants

31

## STATEMENT OF RELATED CASES
### (Circuit Rule 28-2.6)

Appellants submit that the following cases involved this case but the present appeal involves different issues and arises from different claims and a different district court proceeding.

Appeal Docket Number: 12-7250
United States District Court No.: CV 12-00717 –JAM-JFM
(Eastern District)

Appeal Docket Number: 12-16828
United States District Court No.: CV 12-00717-JAM-JFM
(Eastern District)

Dated:  December 4, 2012

LAW OFFICE OF NINA R. RINGGOLD

By:    s/ Nina R. Ringgold
                    Nina R. Ringgold, Esq.
                    Attorney for the Appellant

32

## Form 6. Certificate of Compliance With Type-Volume Limitation,Typeface Requirements, and Type Style Requirements

1.This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)because:

☒this brief contains  **7,057** words, excluding the parts of the brief exempted
by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐this brief contains words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐this brief uses a monospaced typeface and contains lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)(7)(B)(iii).

2.This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☐this brief has been prepared in a proportionally spaced typeface using *(state name and version of word processing program)_____*
*(state font size and name of type style)_____, or*

☐this brief has been prepared in a monospaced spaced typeface using *(state name*
*and version of word processing*
*program)_____*

with *(state number of characters per inch and name of type style)*

_____

_____.

Signature:        s/ Nina R. Ringgold, Esq.

Attorney for:     Appellants

Date:             December 3, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2012, 2012, I electronically filed the following documents with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system:

## APPELLANT'S OPENING BRIEF

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and this declaration was executed on December 4, 2012 at Los Angeles, California.

<u>s/ Matthew Melaragno</u>